# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

2003 Chevrolet Van, bearing California,
License Plate 7F14741,
Vehicle Identification Number
1GCHG35U731237983,

**APPLICATION AND AFFIDAVIT**

**FOR SEIZURE WARRANT**

CASE NUMBER: '07 MJ 8939

I, __Jeffrey Butler__, being duly sworn depose and say:

I am a __Special Agent__, and have reason to believe
*Official Title*
there is now certain property, namely *(describe the property to be seized)*

2003 Chevrolet Van, bearing California, License Plate 7F14741, Vehicle Identification Number 1GCHG35U731237983,

which is *(state one or more bases for seizure under the United States Code)*: a vehicle conveyance which has been used in the commission of violations of 21 U.S.C. § 841(a)(1) and 31 U.S.C. § 5324(b), and subject to seizure under Title 21, United States Code, Sections 881(a)(6) and 31 U.S.C. § 5317(c)(2). The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT, WHICH IS HEREBY INCORPORATED BY REFERENCE AND MADE A PART HEREOF.



FILED
NOV 19 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

11-19-07  4:31 pm at  El Centro, California
Date/Time issued

Honorable   **PETER C. LEWIS**

United States Magistrate Judge
*Name and Title of Judicial Officer*

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Special Agent Jeffrey Butler, being duly sworn, hereby depose and state the following:

### TRAINING AND EXPERIENCE

1. I have been employed as a special agent with the Drug Enforcement Administration ("DEA") for three years. Prior to my employment with the DEA, I was employed as a police officer for four years. I am currently assigned to investigate illicit drug trafficking organizations operating in and around Imperial County, California.

2. Throughout my law enforcement career, I received in excess of 140 hours of classroom training in the field of narcotic enforcement. The training focused on how controlled substances are consumed, manufactured, packaged, marketed and distributed. I have also attended the Basic Telecommunications Exploitation Program and the Basic Internet Telecommunications Exploitation Program at the DEA Special Operations Division and the U.S. Department of Justice Asset Forfeiture and Money Laundering Section Financial Investigations Seminar.

3. As a special agent, I have participated in more than 20 investigations acting as the case agent involving drug trafficking organizations. Pursuant to my participation in those investigations, I have performed various tasks which include, but are not limited to:

   a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs;

   b. Participating in the tracing of monies and assets gained by drug traffickers from the illegal sale of drugs (laundering of monetary instruments);

1

c.  Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); and

d.  Functioning as a case agent, which entails the coordinating with multiple jurisdictions for surveillance and enforcement activity, monitoring and interpreting intercepted communications of drug traffickers, and collecting evidence to expose and identify members of complex drug trafficking organizations.

e.  I have made over 100 state and federal arrests for narcotics related offenses. I have participated in undercover investigations involving the purchase of controlled substances, the execution of search warrants, surveillance in connection with narcotic investigations, and the interviews of confidential sources. Through my training and participation in these investigations, I have gained valuable insight into the typical makeup and operation of drug trafficking organizations, the various methods those organizations use to import, transport, and distribute illegal narcotics, the laundering of the proceeds from narcotics trafficking, and the most successful investigative techniques used to combat the drug trafficking organizations. I have also become familiar with the techniques and procedures drug trafficking organizations use to communicate with their members. My experience as a special agent with the DEA, my participation in the investigation of narcotic organizations, my conversations with other special agents of the DEA familiar with

2

narcotic trafficking and money laundering matters, and my training form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

4. I periodically review intelligence briefs and information from various sources including DEA, and the Narcotics Information Network, and gain additional information concerning the value of narcotics, narcotic trafficking activities and trends. Through my daily activities, I consult with other special agents and police officers, cooperating informants, and review publications, to gain intelligence about the structure of narcotics trafficking organizations, and the current price of narcotics in the United States as well as in Mexico and other source countries.

## DESCRIPTION OF PROPERTY TO BE SEIZED

5. This affidavit is made in support of a seizure warrant for a 2003 Chevrolet van, bearing California license plate 7F14741, Vehicle Identification Number 1GCHG35U731237983 [hereinafter, the "SUBJECT VEHICLE"]. California Department of Motor Vehicles records reflect that the SUBJECT VEHICLE is registered to Anthony Kellum [hereinafter, "Kellum"] with no lien holder.

## STATUTORY AUTHORITY FOR SEIZURE AND FOFEITURE

6. The **SUBJECT VEHICLE** is subject to forfeiture under 21 U.S.C. § 881 (a)(6), which provides in pertinent part:

> Subject property. The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> ...
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange

3

for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

7. The **SUBJECT VEHICLE** is also subject to forfeiture under 31 U.S.C. §5317 (c)(2), which provides in pertinent part:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5324(b), or any property traceable to such property, may be seized and forfeited to the United States Government.

Title 31 U.S.C. Section 5324(b) prohibits structuring and provides as follows:

> No person shall, for the purpose of evading the report requirements of section 5332 or any regulation prescribed under such section ---
>
> (1) cause or attempt to cause a nonfinancial trade or business to fail to file a report required under section 5331 or any regulation prescribed under such section;
>
> . . . .
>
> (3) structure or assist in structuring, or attempt to structure or assist structuring, any transaction with one or more nonfinancial trades or businesses.

8. Venue and Jurisdiction

18 U.S.C. § 981(b)(3):

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed

4

under section 1355(b) title 28, and may be executed in any district in which the property is found, . . .

28 U.S.C. § 1355(b)(1)(A):

A forfeiture action or proceeding may be brought in----

(A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred . . . .

SUMMARY OF INVESTIGATION

**A. Background**

9.  On October 26, 2007, at approximately 3:00PM, Kellum was traveling northbound on HWY 111 from Niland, California when he arrived at a United States Border Patrol [hereinafter, "USBP"] checkpoint driving the **SUBJECT VEHICLE**. As Kellum approached primary inspection, USBP Agent Timothy Delgado was in pre-primary with his service canine where his service canine alerted to the **SUBJECT VEHICLE**. Kellum stopped for agents in primary inspection and upon questioning, without being prompted by agents, offered consent to the USBP to search the **SUBJECT VEHICLE**. Kellum and the **SUBJECT VEHICLE** were then referred to secondary inspection. A search of the **SUBJECT VEHICLE** in secondary inspection resulted in the seizure of approximately 29 grams of cocaine base ( including packaging), 28 grams of marijuana (including packaging), and $26,528.00 in cash. The USBP contacted the Drug Enforcement Administration Imperial County Office to continue the investigation.

10.  Special Agent Jeff Butler and Task Force Officer Craig Moore responded to the HWY 111 checkpoint. Upon arrival at the checkpoint, SA Butler and TFO Moore searched the **SUBJECT VEHICLE** and found the sales contract and copies of the checks used to pay for the **SUBJECT VEHICLE**.

11.  SA Butler and TFO Moore interviewed Kellum, after first advising KELLUM of his Miranda Warnings in English, regarding the cash, drugs, and **SUBJECT VEHICLE**.

KELLUM initially told SA Butler and TFO Moore that the marijuana inside the **SUBJECT VEHICLE** was his, stating, "I smoke weed." KELLUM denied any knowledge of the cocaine base found in the **SUBJECT VEHICLE**.

12. KELLUM stated the money found in the **SUBJECT VEHICLE** was for a down payment on a house in Compton, California. KELLUM said he had been saving the money at his girlfriend's house in Calipatria, California. KELLUM claimed he earned the money working as a plumber and was scared to keep the money at his house in Compton because he had been robbed in the past.

13. After additional questioning, KELLUM stated the money found in the **SUBJECT VEHICLE** was from two earlier drug sales in Imperial County that morning. KELLUM described the first sale as a kilogram of cocaine KELLUM drove from Compton in the **SUBJECT VEHICLE** and sold to a black male adult known to KELLUM as FNU LNU, aka: DUB. According to KELLUM, he met with DUB earlier that morning at Brownies in Brawley, California. Dub paid $16,700 for the kilogram of cocaine.

14. KELLUM described the second sale as one half kilogram of cocaine KELLUM drove from Compton in the **SUBJECT VEHICLE** and sold to a black male adult known to KELLUM as Daryl LNU. During this sale, KELLUM met with Daryl in the El Centro, California Wal-Mart. Daryl paid $8,200 for the one half kilogram of cocaine.

15. KELLUM described selling both DUB and Daryl similar quantities of cocaine every two weeks. KELLUM admitted the cocaine base was his and was left over from a separate drug deal KELLUM made earlier in the week.

16. Kellum stated he tried purchasing the **SUBJECT VEHICLE** with "a bag full of cash", but said the car salesman refused to take that much cash. The car salesman told Kellum to go and get checks under $10,000 to pay for the **SUBJECT VEHICLE**.

At approximately 10:15PM, KELLUM and the **SUBJECT VEHICLE** were released from the checkpoint pending further investigation

**B.     SUBJECT VEHICLE Purchase**

17.     SA Butler searched the **SUBJECT VEHICLE** on October 26, 2007, at the USBP HWY 111 checkpoint. SA Butler found the sales contract dated August 17, 2007 for the **SUBJECT VEHICLE** and photocopies of the two checks used to purchase the **SUBJECT VEHICLE**. This sales contract showed Kellum purchased the **SUBJECT VEHICLE** on August 17, 2007 for a total purchase price of $12,500. Kellum purchased the **SUBJECT VEHICLE** with a personal check for $4,000, dated August 17, 2007 from Washington Mutual Bank with an account name of Leslie Kellum and signed by Leslie Kellum. In addition, Kellum used a second check, an official check for $8,000, dated August 17, 2007 from Washington Mutual Bank. This check also showed the remitter as Anthony and Leslie Kellum. A handwritten note on the sales contract shows, "Rec. $500.00 cash." I believe this indicates the balance of $500 for the **SUBJECT VEHICLE** was paid in cash. This same contract was signed by Kellum.

## CONCLUSION

18.     Based on the forgoing, there is probable cause to believe that the **SUBJECT VEHICLE**, owned by Anthony Kellum, was used to transport narcotics, and the proceeds of narcotics transactions and is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

19.     Additionally, there is probable cause to believe Kellum structured the purchase for the **SUBJECT VEHICLE** using a personal check and an official check, each in an amount of under $10,000 issued from the same bank, on the same day, in violation of 31 U.S.C. § 5324(b. The SUBJECT VEHICLE is therefore also forfeitable pursuant to 31 U.S.C. § 5317(c)(2) as property involved in a transaction in violation of 31 U.S.C. § 5324(b).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: 11-19-07

Jeffrey Butler
Special Agent
Drug Enforcement Administration

Subscribed to and sworn before me on this 19th day of November, 2007.

UNITED STATES MAGISTRATE JUDGE

8